J-S64017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: F.E.V., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: K.V., MOTHER | No. 900 MDA 2017 |

Appeal from the Order Entered May 8, 2017
In the Court of Common Pleas of Snyder County
Civil Division at No(s): OC-81-2016

| IN THE INTEREST OF: A.E.W.B., JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: K.V., MOTHER | No. 901 MDA 2017 |

Appeal from the Order Entered May 8, 2017
In the Court of Common Pleas of Snyder County
Civil Division at No(s): OC-82-2016

BEFORE:  PANELLA, SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED NOVEMBER 20, 2017**

In these consolidated appeals, K.V. ("Mother") appeals from the trial

court's orders entered on May 8, 2017, which granted the petitions filed by

_____

[*]  Former Justice specially assigned to the Superior Court.

the Snyder County Children and Youth Services ("CYS" or "Petitioner") to involuntarily terminate Mother's parental rights to her sons, A.E.W.B., Jr., born in March of 2015, and F.E.V., born in February of 2016 (collectively, "the Children"). The trial court terminated Mother's parental rights to A.E.W.B., Jr., pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and it terminated Mother's parental rights to F.E.V. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b).[1] After careful review, we affirm both orders.[2]

We summarize the relevant facts and procedural history of this case as follows. CYS first became involved with this family in March of 2015 when CYS received a report regarding Mother's older children. N.T., 2/8/17, at 29; Petitioner's Exhibit D. CYS received a second referral in June of 2015, alleging that Mother failed to maintain A.E.W.B., Jr.'s, required medical treatment. N.T., 2/8/17, at 45; Petitioner's Exhibit D. In-home services were implemented until July of 2015 when it was reported that Mother attempted suicide and Father was incarcerated. Petitioner's Exhibit D. CYS

_____

[1] Children's father ("Father") voluntarily consented to the termination of his parental rights. Father is not a party to this appeal nor has he filed an appeal from the termination of his parental rights.

[2] Mother filed separate notices of appeal from the orders involuntarily terminating her parental rights to A.E.W.B., Jr., and F.E.V. On June 15, 2017, this Court entered an order *sua sponte* consolidating Mother's appeals pursuant to Pa.R.A.P. 513.

removed A.E.W.B., Jr. from Mother's care and placed him with Mother's aunt ("Maternal Aunt").

On November 19, 2015, the trial court adjudicated A.E.W.B., Jr., dependent. Trial Court Opinion, 5/8/17, at 1; Order, 11/19/15. Thereafter, F.E.V. was born in February of 2016, and placed with Maternal Aunt when he was two days old. Order, 2/22/16; Motion to Approve Child Permanency Plan, 3/7/16. The trial court adjudicated F.E.V. dependent on February 22, 2016. Order, 2/22/16. Additionally, A.E.W.B., Jr. has special medical needs stemming from a head injury he sustained following a dog-bite accident that occurred when he was three months old. N.T., 2/8/17, at 40-41. As a result, A.E.W.B., Jr. wears a protective helmet and has difficulty consuming foods and beverages. *Id.* at 41.

CYS created permanency plans for Mother to enable her to work toward reunification with the Children. N.T., 2/8/17, at 46-47. The objectives included: (1) maintaining stable housing; (2) obtaining appropriate employment; (3) improving family functioning and parenting knowledge; (4) visiting with the Children; (5) becoming independent and self-sufficient; (6) taking prescribed medication; and (7) attending counseling for her mental health. *Id.* at 49-53.

In November of 2016, Mother was incarcerated for thirty days. N.T., 2/8/17, at 57. On December 30, 2016, CYS filed petitions for the involuntary termination of Mother's parental rights to Children. CYS

petitioned to terminate Mother's parental rights to A.E.W.B., Jr. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).  Likewise, CYS petitioned to terminate Mother's parental rights to F.E.V. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b).  A hearing was held on the petitions on February 8, 2017, during which CYS presented the testimony of Dr. Kasey Shienvold, a clinical psychologist and expert in bonding assessments, Arvel Brown, the CYS placement worker, and Maternal Aunt.  Mother, who was represented by counsel, did not present any evidence.

On May 8, 2017, the trial court involuntarily terminated Mother's parental rights to the Children.  Mother timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother presents the following issues for our review:

1. Should the [t]rial [c]ourt have denied termination and ruled that the Agency's [p]etition under 23 Pa.C.S.[ ] § 2511(a)(1) failed as Mother particularly notes that Mother had consistent, appropriate visitation with the children during which she displayed a good transfer of learning, and maintained telephone contact with the resource parent concerning the well-being of the children, all of which was within six months prior to the filing of the Agency's petition.

2. Should the [t]rial [c]ourt have denied termination and ruled that the Agency's [p]etition under 23 Pa.C.S.[ ] § 2511(a)(2) failed as Mother particularly notes that Mother had consistent, appropriate visitation with the children during which she displayed a good transfer of learning, Mother maintained telephone contact with the resource parent concerning the well-being of the children, and as of January 2017, Mother was consistently attending mental health treatment.

3. Should the [t]rial [c]ourt have denied termination and ruled that the Agency's [p]etition under 23 Pa.C.S.[ ] § 2511(a)(5) failed as Mother particularly notes that Mother was consistently attending mental health treatment and taking her prescription medications, Mother provided the Agency with a lease to a residence, and there was no testimony from the Agency's expert to indicate that it would be in the best interests of the children to sever the parental bond that existed.

4. Should the [t]rial [c]ourt have denied termination and ruled that the Agency's [p]etition under 23 Pa.C.S.[ ] § 2511(a)(8) failed as Mother particularly notes that Mother was consistently attending mental health treatment and taking her prescription medications, Mother provided the Agency with a lease to a residence, and there was no testimony from the Agency's expert to indicate that it would be in the best interests of the children to sever the parental bond that existed.

Mother's Brief at 5-6.

We consider Mother's issues according to the following standard:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, and it requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Mother's issues challenge the termination of her rights under Section 2511(a). We need agree with the trial court only as to any one subsection of Section 2511(a) in order to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Herein, we conclude that the certified record supports the orders pursuant to Section 2511(a)(2), which provides as follows:

> **(a) General Rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the

- 6 -

incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

Regarding section 2511(a)(2), this Court has stated as follows.

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted).

Further, we have opined that "[t]he grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. *Id.* at 340. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services may properly be rejected as untimely or disingenuous. *Id.*

On appeal, Mother argues that the trial court abused its discretion in terminating her parental rights pursuant to Section 2511(a)(2) because she "had consistent, appropriate visitation with the children during which she

displayed a good transfer of learning …." Mother's Brief at 20-21. Further, Mother asserts that she maintained telephone contact with Maternal Aunt and successfully completed the Nurturing Parent Program in September of 2016. *Id.* at 21. Finally, Mother argues that she attempted to remedy CYS's concerns by reading the book, "What to Expect When You're Expecting," which addressed the effects of using drugs while pregnant. *Id.*

The trial court found that Mother's conduct warranted termination under Section 2511(a)(2) and stated as follows:

> [M]other has had 10 different residences during Agency involvement. In addition, she has only been gainfully employed for a brief period of time and she left that employment because "she just had issues at that place and dealings with employees and drama and some other things[.]" … [M]other had the opportunity to attend 69 visits during the course of this case but only attended 15. [M]other has had difficulty following directions regarding the needs of the [C]hildren and during the few visits she had, she inappropriately gave them cheese when [the Children] were allergic to cheese, (she had been previously informed of this fact) and also insisted on changing the [C]hildren when advised they did not need their diapers changed. [M]other has failed to comply with her mental health treatment. She continues to refuse to take her medication as prescribed. … [Mother] has had 2 involuntary psychiatric commitments since [A.E.W.B., Jr.] was born. In addition to her psychiatric commitments she has been incarcerated on at least 2 occasions, the most recent being November 19, 2016.

Trial Court Opinion, 5/8/17, at 7-8.

Our review of the record supports the trial court's decision. CYS removed the Children from Mother's care based upon concerns regarding Mother's untreated mental health issues, drug use, and lack of stable housing. N.T., 2/8/17, at 46, 55. We agree with the trial court that these

deficiencies rendered Mother incapable of parenting the Children at the time of their removal. Arvel Brown, the caseworker associated with Mother's case, testified that Mother has lived at ten residences since CYS became involved, *id.* at 49, and that Mother has failed to provide Mr. Brown with a valid lease. *Id.* at 51.

Further, Mr. Brown testified that Mother was not compliant with her objective to visit the Children. Notably, Mother had the opportunity to attend sixty-nine visits with the Children. N.T., 2/8/17, at 52. Mother, however, attended only fifteen visits, the majority of those visits occurring between May and September of 2016. *Id.* at 69. Although Mother demonstrated an ability to perform basic parenting skills, Mr. Brown testified that:

> [Mother] struggle[d] as far as following all of the directives. She ha[d] a habit of wanting to change the children as soon as they come in despite the aunt saying they don't need to be changed. The children are both allergic to dairy and the last visit [Mother] ended up giving the children cheese and they ended up having a rash despite the aunt telling her prior to the visit not to give it to them.

*Id.* at 53. Mother never progressed past supervised visitation, and in fact, Mother's inconsistency in attending visits with the Children resulted in CYS reducing her visits from two to one each week. *Id.* at 52. Mother also failed to attend any medical appointments for the Children. *Id.* at 42.

Furthermore, Mother was inconsistent in taking her medication and reported discontinuing her medication in favor of ingesting marijuana. N.T.,

2/8/17, at 54-55. Finally, Mother failed to comply with her objective to obtain employment. During a permanency hearing on November 19, 2015, Mother reported that she was on medical leave from work. *Id.* at 50. Later, in June of 2016, Mother reported that she was unemployed. *Id.* Mother's unemployment and her refusal to comply with the Domestic Relations order requiring her to search for a job resulted in her incarceration from November to December of 2016. *Id.* at 57.

Based on the foregoing, we discern no abuse of discretion by the trial court in terminating Mother's parental rights pursuant to Section 2511(a)(2). Mother's repeated and continued incapacity, neglect, or refusal to perform her parental duties has caused the Children to be without essential parental care, control or subsistence necessary for their physical and mental well-being. Mother's failure to meet her objectives supports the trial court's conclusion that Mother refuses to remedy the conditions that led to the Children's placement.

Having determined that Mother's parental rights were properly terminated under Section 2511(a)(2), we engage in the second part of the analysis pursuant to Section 2511(b) in which we determine if termination serves the best interests of the Children. *In re L.M.*, 923 A.2d at 511. Instantly, Mother has not presented a specific challenge to the termination of her parental rights under Section 2511(b); however, we decline to find waiver and shall address the trial court's findings. *See In re C.L.G.*, 956

A.2d 999, 1010 (Pa. Super. 2008) (*en banc*) (addressing Section 2511(b) despite the mother's failure to challenge the trial court's determination under that subsection).

We have explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but under Section 2511(b), the focus is on the child. *In re Adoption of C.L.G.*, 956 A.2d at 1008. In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). *In In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d at 267.

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). While a bonding evaluation may be conducted and made part of the certified record, "[t]here are some instances ... where direct

- 11 -

observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

The trial court made the following determinations relative to the bond, or lack thereof, between Mother and the Children, and the best needs of the Children:

> The Agency called Dr. Casey Shinevold, Ph.D., to testify. Dr. Shinevold conducted a bonding assessment regarding the children and [M]other. Dr. Shinevold opin[ed] that "there was not a healthy attachment or strong attachment between [M]other and [the C]hildren in this case and that the severance of that attachment would not likely have a direct impact on the long term health and development of the [C]hildren." Transcript February 8, 2017, Page 13. Dr. Shinevold indicated there were 2 reasons that he came to this conclusion. Initially the age at which the [C]hildren were removed from the home and secondly the mental health issues of [M]other.
>
> [F.E.V.] was removed from [M]other when he was 2 days old. [A.E.W.B., Jr.,] was removed first when he was 3 months old and then again at 6 months old. Dr. Shinevold's opinion was that at that age and the length of time the [C]hildren have been out of the home there was not a good opportunity for a bond to be created and nurtured.
>
> [M]other's long history of mental health issues, suicide attempts and lack of follow through on treatment and medication "is one of the major red flags in terms of the ability to form and maintain healthy attachments", Transcript February 8, 2017, Page 14-15. In addition, Dr. Shinevold indicated that [A.E.W.B., Jr.,] would require a really high level of care given his physical condition. Dr. Shinevold's conclusion was there was not a significant or strong enough bond between the [C]hildren and [M]other that there was a likelihood of any detrimental effects should they be removed from [M]other.
>
> Dr. Shinevold also addressed the fact that with children as young as [A.E.W.B., Jr.,] and [F.E.V.], the fact that [M]other had

weekly visitation for 3 or 4 hours was not really enough to create a bond. Based on the testimony, [M]other only exercised 15 of 69 visits throughout the course of this case. Dr. Shinevold went on to indicate that it is not merely time spent with the child but there is a need to have "a parent who is willing, consistent and able to then attune to the needs of a child and meet them such that a bond is created.["] Clearly, in this case, [M]other has consistently demonstrated her inability or unwillingness to meet her own needs let alone the needs of the [C]hildren.

Based on Dr. Shinevold's testimony, the [C]hildren would not be harmed by severing the parental bond with [M]other. The inquiry, however, does not simply end with whether the [C]hildren would be harmed by terminating the bond but whether the best interests of the [C]hildren would be served by terminating the bond.

The [C]hildren have been placed with the maternal aunt. The maternal aunt has provided significant care for both children. [A.E.W.B., Jr.,] had unique and significant medical needs which the resource parents have been attentive to and provided for to such a degree that [A.E.W.B., Jr.,] is improving substantially. It is clear from the care that the [C]hildren have received since their placement in their current home maintaining that relationship serves their best needs and welfare.

In addition, the kinship placement parents have indicated a willingness to adopt both children. Since the potential adoptive parents are related to the [C]hildren by blood, the potential traumatic effect on the [C]hildren of being severed from their biological roots is minimized in this situation. Being adopted by blood relatives will continue the [C]hildren's connection with their biological family for the rest of their lives.

Clearly, the termination of [M]other's parental rights would serve the needs and welfare of the [C]hildren. The [C]hildren will be adopted by family members and the bond, and the severance of the bond (if one exists) with [M]other will not have an adverse effect on the [C]hildren.

Trial Court Opinion, 5/8/17, at 12-14.

After a careful review of the record in this matter, it is our determination that the record supports the trial court's factual findings, and the trial court's conclusions are not the result of an error of law or an abuse of discretion with regard to Section 2511(b). Accordingly, it was proper for the trial court to conclude that there was no bond such that the Children would suffer permanent emotional harm if Mother's parental rights are terminated, and that termination served the best needs of the Children.

For the reasons set forth above, we conclude that Mother is entitled to no relief. Therefore, we will not disturb the trial court's determination, and we affirm the orders involuntarily terminating Mother's parental rights to the Children.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/2017